**Kevin C. Brague, OSB No. 050428**
kbrague@braguelaw.com
The Brague Law Firm
12972 SW Tearose Way
Tigard, Oregon 97223
Telephone: 503.352.4664
Facsimile: 503.536.6832
    Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **C.K.**, by and through his next friend, **SUZANNE ROPPE**,<br><br>        Plaintiff,<br><br>    v.<br><br>**EUGENE SCHOOL DISTRICT 4J**, an Oregon public school district,<br><br>        Defendant. | Case No. 6:12-cv-1640<br><br>**COMPLAINT**<br><br>(Title IX; Section 1983 Civil Rights; Section 504 Discrimination; IIED; and Negligence / Negligence Per Se)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.

Federal Court jurisdiction exists under 28 USC § 1331 and 28 USC § 1343(a)(3) based on the following laws: Fourth and Fourteenth Amendments to the Constitution; and Section 504 of the Rehabilitation Act of 1973, now codified as 29 USC §§ 794 and 794a.

2.

Supplemental jurisdiction arises under 28 USC § 1367 for all common law and State of Oregon claims.

3.

Venue is proper in the U.S. District Court of Oregon, Eugene Division because all acts alleged herein occurred in Lane County, State of Oregon.

## PARTIES

4.

At all material times, Plaintiff was a resident and domiciliary of Lane County, State of Oregon and was a student within Defendant Eugene School District 4J.

5.

At all material times, Defendant Eugene School District 4J ("the District") is and was at all material times a school district and corporate public body organized and engaged in providing educational services in Lane County, Oregon.

## STATEMENT OF THE CASE

6.

Plaintiff, by operation of law ORS 339.010 and 339.020, mandatorily attended school within the District. Beginning in the fall of Plaintiff's 6th grade school year and continuing through his 8th grade year, Plaintiff was subjected to harassment. On a daily basis Plaintiff was targeted as "gay" though he does not identify as gay. Plaintiff was called "gay," "douche bag," and "faggot," in classes, in the lunchroom, in the halls, and on school grounds before and after school.

/ / /

7.

The situation grew worse and was brought to his parents' attention after an incident in which Plaintiff was knocked to the ground, attempted to run over with their bikes, kicked by a couple of boys, and had a helmet thrown at him. He was called a "faggot" repeatedly during the incident. The very next day one of the boys told Plaintiff "Yesterday was so much fun, wasn't it [Plaintiff]? I'm going to do it again today."

8.

Plaintiff's mother emailed Alicia Kruska, the interim principal, and informed her of what was happening. Alicia talked with the boys and one of the boys ceased. But less than a month later the District was informed by Plaintiff's mother, that another boy, was calling Plaintiff names on a daily basis, including "faggot," "bitch" and "asshole," both in classes and in the halls. Plaintiff's mother informed Alicia Kruska that one boy was also knocking books out of Plaintiff's hands and shoving Plaintiff into walls and lockers. Plaintiff's mother also informed her that this boy told a girl to tell Plaintiff that he better watch his back tomorrow. Plaintiff's mother expressed frustration and noted that "Plaintiff is completely distracted and frustrated and doesn't know what to do or how to handle it but I feel like he is ready to snap."

9.

In the fall of Plaintiff's 7th grade year, the harassment continued. Plaintiff's parents were again made aware that Plaintiff was being harassed at school and that the harassment included more physical assaults. Plaintiff was attacked on his way home from school by another student who came up from behind and pushed him into a fence resulting in a bloodied elbow. This information was brought to the attention of Mr. Beard, the vice principal at Cal Young Middle School.

10.

This email also informed the District that Plaintiff was hit in the head twice by two boys during a game of dodge ball. The District was also informed that Plaintiff's lunch had been taken

Page 3 – COMPLAINT

and thrown away on a number of occasions. The District was informed that Plaintiff "is a shy boy and will not be able to handle this on his own."

11.

The District was informed that a student took Plaintiff's milk the previous day and threw it away. The District was informed that a student had taken a bag of cookies from Plaintiff and crushed them then threw them back at Plaintiff. The District was informed that Plaintiff's milk had again been taken and thrown away. In each case Plaintiff's mother informed the District by email. The District assured her that they would keep a close eye on Plaintiff in the lunchroom. Plaintiff's mother later was told by the principal that she was watching the wrong student with the same name for a couple of weeks.

12.

Plaintiff's parents took Plaintiff to their family doctor, concerned about constant stomach pains. Beginning in the fall of 2009 Plaintiff began seeing a private counselor regarding the issues at school. He continues in counseling today, though, it is now on an as needed basis.

13.

Plaintiff's mother again notified the District that Plaintiff had texted her from school that there was another incident and that he was ready to quit school. That morning as Plaintiff attempted to enter the building some kids forced the doors closed on him. Plaintiff ended up falling to the ground, landing on his back, and having the wind knocked out of him. One of the boys laughed at him. Plaintiff's mother informed the District that Plaintiff had at least one test that day and she was concerned that incidents like this will affect his ability to perform in class.

14.

Plaintiff's mother in an email with to the school informed the principal that "[Plaintiff] is really a mess right now. Very tearful on Friday and crying this morning, not wanting to go to school." Plaintiff reported that one of the boys who had pushed the doors shut on him said something like "Ha Plaintiff I thought you were going to die! That would have been so funny!"

Page 4 – COMPLAINT

15.

For the remainder of the school year Plaintiff continued to experience male students passing him in class and in the halls and whispering "faggot" or "gay" in his ear. He did not report every incident to his parents nor did he report the students at school. He was embarrassed and began wondering if perhaps he was gay. He believed that there was no way to stop the harassment as it continued in spite of numerous previous reports to the District.

16.

By this time Plaintiff was also being told that he needed to watch out for his mother - that if he said anything to her about what was happening they would get her. This was reported to the District. Another incident reported to the District was when Plaintiff momentarily stepped away from a computer he was working at and returned to find pictures of dead bodies on the screen.

17.

Some of the harassment was also overtly condoned by an adult, Edward Chastain, who was at school every day eating lunch at the table where Plaintiff sat with his friends and other students. Apparently, Ed was a parent volunteer. On one occasion Ed played a video of a track meet in which Plaintiff had been lapped, pointing out to everyone to watch this funny part where Plaintiff is lapped. The video was projected onto a 100 inch screen in the lunchroom for all to see during both lunch periods.

18.

On many occasions when boys at the table were calling Plaintiff gay, Ed would laugh. The only times he said anything it just made the situation worse in Plaintiff's eyes. At least twice Plaintiff recalls Ed saying something to the effect of "Let's not make fun of him - he can't help it." Plaintiff's mother informed the District about Ed but was told there was nothing the District could do.

/ / /

19.

Plaintiff's mother emailed the District yet again. In her email she pointed out that "[Plaintiff] has continuously been subjected to harassing behavior, both physical and verbal. He 'hates' school and at this point and has come home crying several times over the past month due to incidents that have occurred. How many times do I need to tell him 'it will get better' or 'try to ignore it'?? My son has no faith in the system at this point and frankly I have my concerns. From my and my husband's perspective it would appear that there is a general lack of rules or discipline at the school which has me very concerned and is creating a hostile environment for my child that is not conducive to learning. If I were to request a meeting with you every time Plaintiff came home and told me what was happening I would be in your office on a weekly basis."

20.

The harassment continued in the fall of his 8th grade year and Plaintiff began experiencing severe panic attacks. By the end of September he missed over a week and a half of school. He was diagnosed with depression, panic disorder and social phobia. Plaintiff's mother met with the school principal sometime in September and informed her of the diagnoses. In spite of the fact that Plaintiff now had medical diagnoses - caused by the harassment he was experiencing - and that he was having difficulty attending school no 504 plan was created for Plaintiff. By the end of Plaintiff's 8th grade year he had earned only half the credits a typical 8th grader earns due to his inability to attend school and the District's refusal to provide home instruction beyond 7.5 weeks.

21.

Section 504 was not even mentioned to his parents until the Spring of 2011. Plaintiff's parents provided a medical statement from Plaintiff's psychologist, Dr. Sorenson, in which he indicated that "the physical and sensory factors that may affect the child's educational performance," included "social phobia and major depression which together impair severely both

his ability to attend school and complete assigned work." The District concluded that Plaintiff was covered by 504, but, since he was not enrolled the District could not develop a 504 plan.

22.

During the 2010/2011 school year Plaintiff often missed school and classes due to his anxiety and depression resulting from the hostile education environment within the District. As a result of his absences, the District dropped Plaintiff from enrollment. Plaintiff's mother emailed the District on June 10, 2011 noting "[t]he only reason that the school could not accommodate Plaintiff with the 504 plan in May was because the district had "legally" dropped him from the attendance records due to nonattendance. The nonattendance was due to Plaintiff's medical disability caused by his severe depression and anxiety (in addition to some horrible side effects from withdrawal from one of his medications)."

23.

At one point the District changed Plaintiff's home room class as its solution to the problem. While Plaintiff experienced less harassment after that he was still subjected to being called "gay" and a "faggot" throughout the year on those days he was able to attend school. Plaintiff reports that about half of the boys in his grade participated in the harassment. On April 20, 2011 Plaintiff's mother wrote the District and noted an emergency visit to the counselor. She shared that Plaintiff's "anxiety and depression is very real and seems to be centered around the school and the kids." She noted that he had told the counselor that "going into the building was like being told to swim in hot lava" and "that at times he has said he would rather die than go back."

24.

On May 3, 2011 Plaintiff's mother stated her belief that the District believed the harassment was Plaintiff's fault and failed to recognize its *in locos parentis* duty to Plaintiff: "I want you to know that truly none of this is by choice for Plaintiff. More than anything he wants to be a "normal" kid and be in school with his friends. I had the impression based on a few things

Page 7 – COMPLAINT

that were said last week that somehow it is believed that some of this must be in his or our control. There were days that Plaintiff was literally on the floor crying in pain and agony and screaming he wanted to die. He has been suicidal on more than one occasion. He sleeps in our room many nights so that we can keep an eye on him."

25.

During the three years of middle school Plaintiff faced daily verbal harassment and frequent physical assaults. In addition to those mentioned above Plaintiff repeatedly was shoved into the walls or lockers hard enough to break his binders and repeatedly had his chair pulled out from under him as he was sitting - ending up on the floor.

26.

Plaintiff now attends private school at an annual cost of approximately $10,000.  Notably, early on in the school year Plaintiff was targeted for harassment by a fellow student. The incident was reported, the school took immediate action, and the comments have completely stopped. Another student was bullying him [non sexual in nature] and that too was handled effectively. These incidents, though handled well by his new school, caused Plaintiff much distress. His parents and counselor were concerned that Plaintiff could relapse. The affects of the harassment are ongoing and are likely to affect Plaintiff for years to come as studies have shown that memories of childhood bullying is associated with high rates of depression, social anxiety, pathological perfectionism, and greater neuroticism in adulthood.

27.

Oregon teachers and administrators are required by ORS 342.123 to know the law and ethics including Title VI and Title IX prohibiting discrimination.

28.

On or about June 10, 2011 Plaintiff's mother sent the District a notice of its failure to accommodate Plaintiff and denial of educational access.  In addition, on December 14, 2011, the District was again provided notice of potential claims against it.

THE BRAGUE LAW FIRM, LLC
12972 SW Tearose Way
Tigard, Oregon 97223
503.352.4664

## FIRST CLAIM FOR RELIEF

(Title IX – Peer on Peer Sexual Harassment)

29.

Plaintiff alleges and incorporates by reference paragraphs 6 through 28 above.

30.

The District receives Federal funding.

31.

The District was made aware, and had actual knowledge of the adverse treatment of Plaintiff on numerous occasions, but did not take sufficient action to remedy the teasing, bullying, or sexual discrimination and was deliberately indifferent to the severe, pervasive and objectively offensive conduct of the many students within the District.

32.

As a result of the District's deliberate indifference to the teasing, bullying, and sexual discrimination based on Plaintiff's perceived homosexuality, Plaintiff was deprived access to educational opportunities or benefits provided by the District.

33.

Plaintiff has suffered and continues to suffer from the above described teasing, bullying and sexual discrimination and is damaged in an amount to be proved at trial.

34.

Pursuant to 42 USC § 1988, Plaintiff is entitled to an award of his attorney fees and costs incurred in this action.

/ / /

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

(Fourth and Fourteenth Amendment Violation:

Equal Protection Clause; 42 USC § 1983)

35.

Plaintiff alleges and incorporates by reference paragraphs 6 through 34 above.

36.

At all material times, Defendant District had an unofficial policy, custom or practice of intentionally allowing student-on-student perceived gender discrimination.

37.

As a result of the District's unofficial policies, customs, or practices Plaintiff was harassed, bullied, disciplined, and punished by his fellow students which behavior was condoned and tolerated by the District.

38.

The District's unofficial policies, customs, or practices are unconstitutional because the District failed to act and was deliberately indifferent against Plaintiff based on its perception of Plaintiff's sexuality.

39.

The District's unofficial policies, customs, or practices are unconstitutional in that they deprived Plaintiff of his right to an education that is equal to his peers which violates the Fourteenth Amendment of the Constitution.

40.

As a result of the District's unofficial policies, customs, or practices, Plaintiff was bullied, harassed, assaulted and denied educational opportunities in violation of the Fourth Amendment of the Constitution.

/ / /

41.

As a direct result of the District's unofficial policies, customs, or practices Plaintiff suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, and emotional trauma, all to his economic and noneconomic damage in an amount to be proven at trial.

42.

Pursuant to 42 USC § 1988, Plaintiff is entitled to an award of his attorney fees and costs incurred in this action.

### THIRD CLAIM FOR RELIEF

(Section 504)

43.

Plaintiff realleges and incorporates by reference paragraphs 6 through 42, above.

44.

Plaintiff is a person with disabilities and his disabilities substantially limits major life activities such as accessing regular education.

45.

The District was aware of Plaintiff's disabilities, but failed to provide Plaintiff with reasonable accommodations, special education services, or supports.

46.

The District receives Federal monies by and through the State of Oregon and other Federal money through grants.

47.

As a result of the District's knowing and intentional discrimination, Plaintiff suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, and emotional trauma, all to his economic and noneconomic damage in an amount to be proven at trial.

48.

Plaintiff is entitled to an award of his attorney fees and costs pursuant to 29 USC § 794a.

## FOURTH CLAIM FOR RELIEF

(ORS § 659.850)

49.

Plaintiff realleges and incorporates herein by reference paragraphs 6 through 48, above.

50.

The District intentionally or unintentionally, but unreasonably differentiated and treated Plaintiff differently from his peers based on his disability.

51.

Plaintiff is damaged in an amount to be proved at trial for the District's discrimination.

52.

Plaintiff further seeks punitive damages for the District's discrimination.

## FIFTH CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress)

53.

Plaintiff realleges and incorporates herein by reference paragraphs 6 through 52, above.

54.

Plaintiff and the District are in a special relationship (in locos parentis).

55.

The District's conduct in regards to Plaintiff was extreme and outrageous and constitutes an extraordinary transgression of the bounds of socially tolerable conduct.

/ / /

Case 6:12-cv-01640-MC   Document 1   Filed 09/11/12   Page 13 of 16

56.

The District acted intentionally and knowingly to cause, or in reckless disregard of whether their acts would cause Plaintiff to suffer emotional distress.

57.

As a direct and proximate result of The District's unlawful conduct, Plaintiff is damaged in an amount to proven at trial.

58.

Plaintiffs further seek punitive damages for the District's unlawful conduct.

## SIXTH CLAIM FOR RELIEF

(Negligence / Negligence Per Se)

59.

Plaintiff realleges and incorporates herein by reference paragraphs 6 through 58, above.

60.

The District has a duty of *in loco parentis* when students are within the school boundaries and within school hours. The District breached its duty to Plaintiff by failing to follow Eugene School District 4J Policy JB prohibiting discrimination, harassment, intimidation, hazing or bullying. The District further breached its duty to Plaintiff by failing to adequately investigate and deter the discrimination, harassment, intimidation, hazing or bullying experienced by Plaintiff.

61.

The District breached its special duties to Plaintiff by failing to adhere to the law and its own policy in the performance of its official duties, and by so doing, proximately and foreseeably caused Plaintiff's injuries, damages and losses.

/ / /

Page 13 – COMPLAINT

THE BRAGUE LAW FIRM, LLC
12972 SW Tearose Way
Tigard, Oregon 97223
503.352.4664

62.

As a result of the District's failure to discrimination, Plaintiff suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, and emotional trauma, all to his economic and noneconomic damage in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

(Negligence / Negligence Per Se)

63.

Plaintiff realleges and incorporates herein by reference paragraphs 6 through 62, above.

64.

The District warrants and accepts the burden and responsibility of keeping students safe by and through its adopted school board Policy EB/EBC which states: "it shall be the policy of the school board to provide for the safety of all pupils, employees, and members of the public at all times while they are engaged in school district activities."

65.

The District owes Plaintiff a duty to supervise all students when they are in in school. District personnel are expected to act as reasonable adults in providing for the safety of students in their charge, and supervise all students at all times.

66.

The District breached its duty of supervision Plaintiff which allowed for other students to harass, intimidate, bully, discriminate, and haze him without deterrence by District personnel. By failing to supervise its students, the District created, allowed, and condoned a hostile education environment which proximately and foreseeably caused Plaintiff's injuries, damages and losses.

/ / /

67.

As a result of the District's failures, Plaintiff suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, depression, and emotional trauma, all to his economic and noneconomic damage in an amount to be proven at trial.

WHEREFORE, Plaintiff, by and through his guardian ad litem, prays for the following relief:

1. On his First Claim for Relief, for a finding that the District violated Title IX, and for his damages in an amount to be proven at trial;

2. On his Second Claim for Relief, for a finding that the District violated Plaintiff's constitutional rights through a denial of rights under the Fourteenth Amendment to the Constitution, as a result of the District's unconstitutional policies, customs, or practices, and for his damages in an amount to be proven at trial;

3. On his Third Claim for Relief, for a finding that the District violated Plaintiff's protected rights under Section 504 of the Rehabilitation Act of 1973, and for damages in an amount to be proven at trial;

4. On his Fourth Claim for Relief, for a finding that the District discriminated against Plaintiff under Oregon state law, and for damages in an amount to be proven at trial;

5. On his Fifth, Sixth, and Seventh Claims for Relief, for a finding that the District is liable to Plaintiff for intentional infliction of emotional distress, Negligence and Negligence Per Se;

6. For economic damages in an amount to be proven at trial;

7. For noneconomic damages in an amount to be proven at trial;

/ / /

/ / /

    8.       For attorney fees and costs pursuant statute including 42 USC § 1988, and 29 USC § 794a.

    9.       For any other just and equitable relief.

DATED this 7th day of September, 2012.

                        THE BRAGUE LAW FIRM

                        By /s/ Kevin C. Brague
                            Kevin C. Brague, OSB No. 050428
                            kbrague@braguelaw.com
                            12972 SW Tearose Way
                            Tigard, Oregon 97223
                            503.352.4664
                            503.536.6832 – fax
                            Attorney for Plaintiff